UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELMHURST LINCON-MERCURY, INC. EMPLOYEES 401(k) PROFIT SHARING PLAN & TRUST, )<br>Plaintiff, )<br>vs. )<br>DAVID G. MEARS, ELMHURST LINCOLN-MERCURY, INC., UNIVERSAL UNDERWRITERS INSURANCE COMPANY, and JAMES F. BEST, P.C., )<br>Defendants. ) | 16 C 2390<br><br>Judge Gary Feinerman |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On February 18, 2016, Elmhurst Lincoln-Mercury, Inc. Employees 401(k) Profit Sharing Plan and Trust ("the Plan"), by its acting trustee, Thomas Potts, Jr., filed this ERISA and negligence suit against its former trustee David Mears, Elmhurst Lincoln-Mercury ("ELM"), ELM's insurer Universal Underwriters Insurance Company, and James F. Best P.C., a law firm that represented Universal in earlier litigation related to the Plan. Doc. 1. A default has been entered against ELM and Mears under Federal Rule of Civil Procedure 55(a). Doc. 40. Universal and Best move under Rules 12(b)(6) and 16(f) to dismiss the claims against them on several grounds, including that the Plan, by filing this suit, improperly split claims that it could and should have brought in a closely related case, *Weir v. Elmhurst Lincoln-Mercury, Inc.*, No. 13 C 2694 (N.D. Ill. filed Apr. 10, 2013). Docs. 35, 38. The motions are granted.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider

"documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the Plan's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted); *see also Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 335 (7th Cir. 2015). The facts are set forth as favorably to the Plan as those materials allow. *See Pierce v. Zoetis*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.,* 610 F.3d 382, 384 (7th Cir. 2010). Because the *Weir* suit provides much of the background for this suit and underpins the motions to dismiss, the court takes judicial notice of the filings in *Weir*. *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (holding that public court documents are judicially noticeable); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (same, and collecting cases).

ELM is a defunct Delaware corporation that was registered with the Illinois Secretary of State until August 13, 2010, when the Secretary revoked its authority to do business in Illinois. Doc. 32 (16 C 2390) at ¶ 5. The Plan is ELM's ERISA-qualified profit-sharing plan, which provided benefits to eligible ELM employees. *Id*. at ¶ 7.

On April 10, 2013, James Weir, a former ELM employee and Plan beneficiary, brought the *Weir* suit against ELM, the Plan, ELM's successor corporation Bright Leasing, Inc., and Mears (ELM's former owner and the Plan's then-trustee), alleging ERISA violations. Doc. 1 (13 C 2694) at ¶¶ 4-5, 7, 19-50. The suit also sought injunctive relief against Oppenheimer & Co., an investment firm that held the Plan's funds on deposit. *Id*. at ¶¶ 6, 51-58. Weir filed a corrected complaint the following day, Doc. 5 (13 C 2694); a first amended complaint on July 1,

2013, Doc. 18 (13 C 2694); and then, with the court's approval, a second amended complaint on May 9, 2014, Doc. 51-52 (13 C 2694). The second amended complaint added Universal as a defendant, alleging that Universal, in its role in the defense and settlement of two earlier federal and state court suits brought on behalf of Plan participants Michael Lureau and Martin Felt (the "*Lureau/Felt* litigation"), breached its ERISA fiduciary duty to the other beneficiaries, including Weir. Doc. 51 at ¶¶ 14-19, 43-51. On August 11, 2014, the court in *Weir* set deadlines for written discovery, dispositive motions, and motions to amend the pleadings and add new parties. Doc. 68 (13 C 2694). In particular, the order set a December 8, 2014 deadline for motions to amend the pleadings or add new parties. *Ibid.*

On November 25, 2014, Weir moved to remove Mears as the Plan's trustee and to replace him with Larry Shippe. Doc. 77 (13 C 2694). The court granted the motion on December 2, 2014, and in the same order granted the parties' joint oral motion to extend the deadlines and, in particular, extended the deadline for filing motions to amend the pleadings or add new parties to February 2, 2015. Doc. 80 (13 C 2694). On January 16, 2015, Weir moved to vacate the order appointing Shippe as the Plan's trustee and to instead appoint Potts. Doc. 81 (13 C 2694). On January 22, 2015—eleven days before the February 2, 2015 deadline for moving to amend the pleadings or add new parties—the court granted the motion to appoint Potts. Doc. 84 (13 C 2694). Neither Weir nor the Plan moved to extend the February 2, 2015 deadline.

On February 12, 2015, the court referred the case to Magistrate Judge Cox for a settlement conference. Docs. 85-86 (13 C 2694). On March 18, 2015, Weir's counsel, Glenn Gaffney, filed an appearance on behalf of the Plan; Gaffney also represents the Plan in this case. Doc. 90 (13 C 2694); Doc. 2 (16 C 2390). On March 26, 2015, the court, on the parties' agreement, extended the discovery and dispositive motion deadlines, but neither Weir nor the

Plan sought to extend the deadline for moving to amend the pleadings or add parties. Doc. 93 (13 C 2694). A settlement conference was held on May 6, 2015, and the parties proceeded before Magistrate Judge Cox through September 2015 regarding the parties' continued settlement discussions. Docs. 100, 111, 113 (Case 13 C 2694).

In the meantime, on December 8, 2014, Universal brought suit in the Circuit Court of Cook County, Illinois (the "Coverage Action"), seeking a declaration that Universal has no coverage obligations to indemnify ELM, Bright, Mears, and the Plan in the *Weir* suit. *Universal Underwriters Ins. Co. v. Elmhurst Lincoln-Mercury, Inc.*, No. 2014 CH 19590 (Cir. Ct. Cook Cnty. filed Dec. 8, 2014). Weir and Potts removed the Coverage Action to federal court, where it was assigned to District Judge Dow. Doc. 1 (15 C 2400). On April 9, 2015, Weir moved to reassign and consolidate the Coverage Action with *Weir*. Doc. 95 (13 C 2694). At a hearing on that motion on April 15, 2015, Doc. 99 (13 C 2694), the Plan (through Gaffney) orally sought leave to file an ERISA cross-claim against Universal (its co-defendant) in *Weir*. Doc. 38-2 (16 C 2390) at 11. The court denied the oral motion, reminded counsel that the time to amend the pleadings had closed, and suggested that the Plan file a written motion for leave to file a cross-claim against Universal. *Id*. at 11-12. The Plan did not file that motion.

On June 1, 2015, Judge Dow remanded the Coverage Action to state court. Doc. 18 (15 C 2400). After the remand, on September 18, 2015, Weir and the Plan filed counterclaims against Universal in the Coverage Action. Docs. 38-3, 38-4 (16 C 2390). The counterclaims alleged, among other things, common law fraud and civil conspiracy, and were premised on allegations materially identical to those underpinning Weir's ERISA claim against Universal in the *Weir* suit. *Compare* Doc. 52 (13 C 2694) at ¶¶ 13-19, *with* Doc. 38-3 (16 C 2390) at 66-68, *and* Doc. 38-4 (16 C 2390) at 67-70.

On December 9, 2015, in the *Weir* suit, the Plan moved in writing for leave to file an ERISA cross-claim against Universal based on Universal's alleged role in the defense and settlement of the *Lureau/Felt* litigation, and a third-party claim against Best, which, as noted, had represented Universal in that litigation. Doc. 134-2 (13 C 2694); Doc. 32 (16 C 2390) at ¶ 43; Doc. 38-6 (16 C 2390). The court set a briefing schedule for that motion. Doc. 137 (13 C 2694). At the presentment hearing, the court observed that Gaffney at the time was representing both Weir, the plaintiff, and the Plan, a defendant; the court observed that such dual representation might be problematic. Gaffney apparently agreed, *see* Ill. Rules of Professional Conduct 1.7(b)(3) ("[A] lawyer may represent a client if … the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation."), for on December 21, 2015, Weir (via Gaffney) moved to dismiss his claim against the Plan. Doc. 138 (13 C 2694). The court granted the motion. Doc. 141 (13 C 2694). And because that dismissal resulted in the Plan no longer being a party in *Weir*, the court denied as moot the Plan's motion for leave to file a cross-claim against Universal and a third-party claim against Best. *Ibid.* Before doing so, the court asked Gaffney on the record whether that was proper course of action; Gaffney agreed that it was, and acknowledged that the Plan's next step was to file a motion to intervene. *Ibid.*

But the Plan did not and has not filed a motion to intervene *Weir*. Rather, after Universal moved to enforce the settlement that it believed (incorrectly) it had negotiated with Weir and the Plan at the May 2015 settlement conference, Doc. 144 (13 C 2694); Doc. 160 (13 C 2694) (denying the motion), the Plan filed this suit. Doc. 1 (16 C 2390). The operative complaint asserts ERISA claims against ELM and Mears (Count I), and ERISA claims against Universal (Count II), and ERISA and negligence claims against Best (Counts III-IV) based on Universal's

and Best's roles in the defense and settlement of the *Lureau/Felt* litigation. Doc. 32 (16 C 2390).

On May 23, 2016, Weir moved in *Weir* to consolidate this case with *Weir*. Doc. 180 (13 C 2694). After Universal indicated that it would move to dismiss this case, the court denied Weir's motion to consolidate without prejudice to renewal after the resolution of the motions to dismiss. Doc. 182 (13 C 2694).

<h2 align="center">Discussion</h2>

Universal contends that the Plan's claims against Universal and Best are duplicative of claims brought in *Weir* and also violate the rule against claim splitting. Doc. 38 (16 C 2390) at 6-9; Doc. 47 (16 C 2390) at 1-4. The court examines each ground in turn.

## I.     Duplicative Claims

"As a general rule, a federal suit may be dismissed for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (internal quotation marks omitted). "District courts are accorded a great deal of latitude and discretion in determining whether one action is duplicative of another, but generally a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Ibid.* (internal quotation marks omitted). The Seventh Circuit has cautioned that "[n]o rule *requires* that district courts dismiss duplicative lawsuits," *Wallis v. Fifth Third Bank*, 443 F. App'x 202, 205 (7th Cir. 2011), and that "[e]ven when prudence calls for putting a redundant suit on hold, it must be stayed rather than dismissed unless there is no possibility of prejudice to the plaintiff," *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002). The court need not confront that issue, however, because this suit and *Weir* are not duplicative.

Universal argues that because the Plan's claims against Universal in this suit rest on the same allegations as Weir's claims against Universal in *Weir*, where the Plan was formerly a party, the Plan's claims in this suit are necessarily duplicative. Doc. 38 (16 C 2390) at 6-7; Doc. 47 (16 C 2390) at 1-2. But as Universal acknowledges, the Plan in this suit is "seeking to recover damages that were not originally disclosed in the *Weir* action," Doc. 47 (16 C 2390) at 3, including damages under ERISA for Universal's and Best's alleged "knowing participation" in Mears's alleged breaches of his fiduciary duty to the Plan. As a result, the relief sought differs between the two cases, and so the claims are not duplicative. *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 889 (7th Cir. 2012) ("[A]llowing a separate suit seeking the same *remedy* would be redundant.") (emphasis added); *Wallis*, 443 F. App'x at 205 (affirming dismissal because "claims and *available relief* do not differ significantly between the two actions") (emphasis added).

## II.    Claim Splitting

"The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (internal quotation marks omitted). Simply put, "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000); *see also Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977); *CIVIX-DDI, LLC v. Expedia, Inc.*, 2005 WL 1126906, at *4 (N.D. Ill. May 2, 2005) ("Courts prohibit a litigant from splitting its claims into multiple actions when the litigant should have brought the claims in a single action."). Relevant here, "[o]ften, the rule against claim splitting applies to prevent a plaintiff from filing a new lawsuit after the court in an earlier action has denied the plaintiff's

request for leave to amend to add the claims later asserted in the second lawsuit." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008); *see also N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 87-88 (2d Cir. 2000) (collecting cases).

Although the Supreme Court long ago recognized the rule against claim splitting, *see The Haytian Republic*, 154 U.S. 118, 124 (1894); *Stark v. Starr*, 94 U.S. 477, 485 (1876), claim splitting is now viewed as "an aspect of the law of preclusion." *Horwitz v. Alloy Automotive Co.*, 992 F.2d 100, 103 (7th Cir. 1993); *see also Chi. Title Land Tr. Co. v. Potash Corp. of Sask. Sales Ltd.*, 664 F.3d 1075, 1081 (7th Cir. 2011) ("Claim splitting is not a way around res judicata. To the contrary, the principle that res judicata prohibits a party from later seeking relief on the basis of issues which might have been raised in a prior action also prevents a litigant from splitting a single cause of action into more than one proceeding.") (internal quotation marks omitted); *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) ("This case is a quintessential example of claim splitting in duplicative lawsuits, a litigation tactic that res judicata doctrine is meant to prevent."); *Carr v. Tillery*, 591 F.3d 909, 913-14 (7th Cir. 2010) ("'[C]laim splitting' … is barred by the doctrine of res judicata."); *Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir. 2008) ("[C]laim splitting … is one component of res judicata."); *Rogers v. Desiderio*, 58 F.3d 299, 300 (7th Cir. 1995) ("Plaintiffs hope that more suits will improve their chances: they seek the better of the outcomes. To discourage the tactic, judges award plaintiffs not the better outcome but the first outcome: whichever suit goes to judgment first is dispositive, and the doctrine of claim preclusion (res judicata) requires the other court to dismiss the litigation. Instead of improving plaintiffs' chances, claim-splitting reduces them.") (citations omitted). "The doctrine of claim preclusion provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their

privies on the same cause of action." *Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1016 (7th Cir. 2014) (internal quotation marks omitted); *see also Palka*, 662 F.3d at 437.

As the Plan does not dispute, *Weir* and this suit involve (or involved) the same parties, are based on the same cause of action, and "arise from a single group of operative facts." *Walczak*, 739 F.3d at 1016 (internal quotation marks omitted). Moreover, for purposes of claim splitting, the court's two denials of leave to amend in *Weir*—as to the Plan's oral motion at the April 15, 2015 hearing, Doc. 99 (13 C 2694); Doc. 38-2 (16 C 2390) at 11-12, and the Plan's December 9, 2015 motion for leave to file, Doc. 134-2 (13 C 2694); Doc. 141 (13 C 2694)—are entitled to preclusive effect. *See Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 45-46 (1st Cir. 2012) ("It is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading.") (internal quotation marks omitted); *Prof'l Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030, 1032 (8th Cir. 2003) (same); *N. Assurance Co.*, 201 F.3d at 88 ("Where the plaintiff is seeking to add additional claims against the same defendant and leave to amend is denied, claim preclusion is appropriate."); *King v. Hoover Grp., Inc.*, 956 F.2d 219, 222-23 (8th Cir. 1992) ("It is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading."). The rule against claim splitting thus bars the Plan's claims against Universal and Best in this case, for those claims rest on precisely the same conduct as the claims that the Plan unsuccessfully tried to bring in *Weir*. "[I]f [the Plan] disagreed with the district court's denial of leave to amend to include these claims, it could have appealed that issue; it did not." *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1035 (7th Cir. 1997).

The Plan protests that several "special factors" made its filing of this suit, rather than moving to intervene and file the claims in *Weir*, proper or even required. Doc. 44 (16 C 2390) at 4 (quoting *Serlin*, 3 F.3d at 224). This argument fails to persuade. "Special factors" may excuse duplicative claims, *Serlin*, 3 F.3d at 224, but the Plan cites no precedent holding that they may also excuse claim splitting. And although "the rule against claim-splitting has been relaxed where it would be inequitable to apply the rule," *Walczak*, 739 F.3d at 1018 (alteration and internal quotation marks omitted); *see also Parker v. Lyons*, 757 F.3d 701, 706 (7th Cir. 2014) ("[I]n Illinois claim preclusion is an equitable doctrine that is not applied when it is fundamentally unfair to do so.") (internal quotation marks omitted), the factors on which the Plan relies do not come close to justifying relaxation of the rule.

First, the Plan argues that its claims against Universal and Best differ from those being pressed in *Weir* because "[o]nly one" of the Plan's claims "is operatively duplicative of Weir's." Doc. 44 (16 C 2390) at 4. That is beside the point, because the Plan *could* have joined its claims against Universal and Best in *Weir* had it done so in a procedurally proper manner (of which more below). *See Barr v. Bd. of Trs. of W. Ill. Univ.*, 796 F.3d 837, 839 (7th Cir. 2015) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)) (internal quotation marks omitted); *Walczak*, 739 F.3d at 1017 ("Claim preclusion applies not only to matters that were actually decided in the original action but also to matters that could have been decided."); *Kratville v. Runyon*, 90 F.3d 195, 197-98 (7th Cir. 1996) (same) (internal quotation marks omitted). Indeed, the Plan attempted to do so twice: orally on April 15, 2015, and in its December 9, 2015 written motion. Doc. 99 (13 C 2694); Doc. 134-2 (13 C 2694); Doc. 38-2 (16 C 2390) at 11-12. Because "[t]here is likely to be

good reason when the court that has control of the first action concludes that a party should not be allowed to advance matters so closely related to the action as to be part of a single claim … [u]nless the court can be persuaded to direct that denial of leave to amend is without prejudice to advancing the new matter in a separate action, preclusion should apply" to the second case.  18 Charles Alan Wright et al., *Federal Practice & Procedure* § 4412 (3d ed. 2016).  The Plan did not ask that denial of its requests to bring claims against Universal and Best in *Weir* be made without prejudice to filing the same claims in a separate suit; nor did it even discuss such a possibility with the court.

The court, moreover, had good reason to deny the Plan's motions.  The April 15, 2015 oral motion came more than two months after the deadline to move to amend the pleadings or add new parties had passed.  Doc. 80 (13 C 2694).  Even so, the court proposed that the Plan file a written motion to file a cross-claim against Universal.  Doc. 38-2 (16 C 2390) at 11-12.  That written motion would have had a reasonable chance of success; although the amendment deadline had passed, the Plan could have filed a written motion well in advance of the June 30, 2015 discovery deadline, and the court very well could have granted the motion pursuant to Rule 16(b)(4).  *See Bell v. Taylor*, ___ F.3d ___, 2016 WL 3568139, at *4 (7th Cir. July 1, 2016) ("[W]hen a district court denies a motion for leave to amend filed after the deadline, the generous standard in Rule 15(a)(2) for allowing amendments is in some tension with Rule 16(b)(4), which governs scheduling orders and requires a showing of good cause to justify modifying time limits.  In this situation, the court is entitled to apply the heightened good-cause standard of Rule16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied.") (citations and internal quotation marks omitted); *Adams v. City of Indianapolis*, 742 F.3d 720, 733-34 (7th Cir. 2014) (same).

The Plan contends that it would have been "disingenuous to bring such a motion when it appeared the parties were close to settling." Doc. 44 (16 C 2390) at 5. That is nonsensical; after all, the Plan made an *oral* motion, which if granted would have had precisely the same effect as a written motion. The Plan was under no obligation to file a written motion, but "[i]t is axiomatic that claim preclusion doctrine requires a party to live with its strategic choices." *Hatch*, 699 F.3d at 45 (internal quotation marks omitted); *see also Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 644 (7th Cir. 2004) ("[A] plaintiff is free to pursue his claims strategically, but he must abide by the consequences of those choices."); *Davis v. City of Chicago*, 53 F.3d 801, 803 (7th Cir. 1995) ("Davis split his claim for his own reasons …. That is an understandable strategy, but not a good reason for foisting two suits on the judicial system and his adversary. Having made a tactical choice …, Davis must accept the consequences.").

As for the December 9, 2015 written motion, it became moot when Weir—represented by the same counsel as the Plan—voluntarily dismissed the Plan from Case 13 C 2694. Doc. 141 (13 C 2694). The Plan contends that this was an "unexpected result," Doc. 44 (16 C 2390) at 6, but that cannot or at least should not have been so, because it is axiomatic a non-party cannot file cross-claims or third-party claims. *See In re Bergeron*, 636 F.3d 882, 883 (7th Cir. 2011) ("A nonparty cannot inject himself into a case without intervening.") (citing *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam)). Regardless, the Plan concedes that it recognized that it needed to intervene in *Weir* pursuant to Rule 24, but that it decided not to do so because it "was unsure of whether … such a motion would also be granted with the complication of bringing claims against" Best and "was reasonably certain that [Best and Universal] would be raising statute of limitations defenses." Doc. 44 (16 C 2390) at 6.

That is unpersuasive.  Gaffney, who was representing the plaintiff (Weir) and one defendant (the Plan) in *Weir*, could have solved the problem by pursuing a course other than having Weir dismiss his claims against the Plan.  For example, the Plan (or Weir) could have retained another lawyer, or the Plan could have moved to realign itself as a party plaintiff.  In addition, any complications arising from the Plan's intervening and bringing claims against Best—and the Plan does not indicate what those complications might have been—resulted directly from the Plan's failure to join Best in *Weir* before the deadline for moving to add new parties.

As noted, if the Plan "disagreed with" either of the court's "denial[s] of leave to amend …, it could have appealed that issue." *Roboserve*, 121 F.3d at 1035.  It did not.  Instead, it filed a new suit "on the same subject in the same court, against the same defendant[s] at the same time." *Curtis*, 226 F.3d at 139.  These circumstances present a textbook example of improper claim splitting.  "When a party chooses to move for leave to amend its complaint and then not to appeal denial of that motion, the party is not entitled to a second opportunity in a later action to litigate the claim that the party sought to add.  Instead, the party's recourse is to appeal, not to start a new action." *Hatch*, 699 F.3d at 45 (citation and internal quotation marks omitted); *see also Sensormatic*, 273 F. App'x at 265 ("Presuming that SSC felt that this denial [of leave to amend] was in error, it should have waited to appeal the decision."); *Sommerfield v. City of Chicago*, 2013 WL 4047606, at *12-13 (N.D. Ill. Aug. 9, 2013) ("Generally, when a plaintiff is denied leave to amend claims, the proper remedy is to appeal that decision, not to file a separate lawsuit."); 18 Wright et al., *supra*, § 4412 ("Any error [in a denial of leave to amend] should be corrected by appeal in the first proceeding.").

As a second "special factor," the Plan argues that by the time Potts was appointed as trustee and appeared through counsel in *Weir*, Doc. 90 (13 C 2694), the deadline to move to amend the pleadings or add new parties had expired. Doc. 44 (16 C 2390) at 4, 7. But Potts was appointed as trustee on January 22, 2015, eleven days before the February 2, 2015 deadline to move to amend the pleadings. Doc. 84 (13 C 2694). Potts (through Gaffney) could have moved to extend the deadline, but he did not do so. Moreover, because Gaffney also represented Weir, Potts was well aware (through Gaffney) of the operative deadlines. Further, the Plan and Weir both appeared content with the February 2, 2015 deadline, as they did not ask to extend the deadline to amend the pleadings or add new parties even when, on March 26, 2015, the court granted the parties' agreed motion to extend the discovery and dispositive motion deadlines. Doc. 93 (13 C 2694).

Third, the Plan contends that when Potts was appointed as trustee, the settlement conference before Magistrate Judge Cox had already been scheduled for May 6, 2015. Doc. 44 (16 C 2390) at 4. That is incorrect. The May 6, 2015 settlement conference was not scheduled until February 24, 2015, over a month after Potts's appointment. Doc. 89 (13 C 2694). In any event, the pendency of a settlement conference does not automatically stay a case, and no party asked the court for a stay. In fact, as noted, the parties moved to extend the discovery and dispositive motion deadlines after the settlement conference had been set but before it had taken place. Likewise unpersuasive is the Plan's contention that the court should excuse the Plan's non-compliance with deadlines because Potts was dealing with various other legal issues related to the Coverage Action. Doc. 44 (16 C 2390) at 4-5. The Plan cites no authority holding that a litigant's (or lawyer's) obligation to deal with other matters justifies failure to adhere to deadlines set by the court, particularly when the litigant does not even move to extend them.

Fourth, the Plan notes that it has moved under Rule 42 to consolidate this case with *Weir*, Doc. 180 (13 C 2694), and that this "further establishes that there was never an attempt" to split the claims. Doc. 44 (16 C 2390) at 6-7. But the cases are separate and in need of consolidation only because the Plan filed a separate suit instead of taking appropriate action during its tenure as a party in *Weir* or seeking to intervene after its dismissal. And contrary to the Plan's contentions, *id*. at 7, consolidation is not "more appropriate" than dismissal in these circumstances, because consolidation would render toothless Rule 16(b)(4), which provides that a court's "schedule may be modified only for good cause and with the judge's consent."

"In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011); *see also Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). As detailed above, the Plan was not diligent here. It failed to move to extend the February 2, 2015 deadline after Potts was appointed as trustee; it sought and obtained extension of the discovery and dispositive motion deadlines without doing the same for the deadline to move to amend or add new parties; it failed to move in writing to file a cross-claim against Universal in April 2015; it failed to move to file cross-claims and third-party claims against Universal and Best until December 2015, more than ten months after the deadline to move to amend or add new parties had passed; and it then failed to move to intervene in *Weir* after its dismissal from the suit. As the Plan itself concedes, "approximately 11 months transpired … between the timeframe that [Potts] first appeared in the litigation and the filing" of this suit. Doc. 44 (16 C 2390) at 8. "[C]ase management depends on enforceable deadlines," and "[i]n managing their caseloads, district courts are entitled to—indeed they must—enforce deadlines." *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) (internal quotation

marks omitted); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006); *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996); *Shine v. Owens-Ill., Inc.*, 979 F.2d 93, 96 (7th Cir. 1992) ("[J]udges must be able to enforce deadlines.") (internal quotation marks omitted). The Plan has not shown good cause for not adhering to the deadlines in *Weir*, and preclusion is appropriate as a result.

Fifth, and finally, the Plan notes that "Universal has cited no cases that stand for the proposition that it is claim splitting when a non-party fails to file a motion for leave to intervene, but rather files its own action." Doc. 44 (13 C 2694) at 7-8. That is true, but it does not describe this case. The Plan *was* a party in *Weir*, but it did not abide by or move to extend the deadline to move to amend the pleadings, and then arranged (through Weir, its lawyer's other client) to obtain its dismissal rather than move to realign itself as a party plaintiff or retain a separate lawyer. It is difficult to fathom how that would not qualify as the Plan "prosecuting its case piecemeal," which the rule against claim splitting prohibits. *Lee*, 802 F.3d at 635.

Because the Plan's claims against Universal in this suit violate the rule against claim splitting, Universal's motion to dismiss is granted. Best's motion to dismiss did not make a claim-splitting argument. Doc. 35. But the above analysis applies equally to the Plan's claims against Best, and so the court, consistent with the Seventh Circuit's directive to enforce its own deadlines effectively, *see Flint*, 791 F.3d at 768; *Raymond*, 442 F.3d at 605; *Reales*, 84 F.3d at 996; *Shine*, 979 F.2d at 96, also dismisses the Plan's claims against Best. *See S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 677 (7th Cir. 2002) ("[D]istrict courts … are not required to ignore … applicable law…. [O]ne could wonder why Triangle's attorney chose not to raise the remedy limitation issue. Whatever the reason, the district court was certainly permitted to do so."); *Jones v. Page*, 76 F.3d 831, 850 (7th Cir. 1996)

("[W]hile a judge should never engage in advocacy from the bench, he or she has an obligation to raise legal issues that the parties have overlooked or neglected.").  Because the rule against claim splitting alone justifies granting the motions to dismiss, the court need not and does not address Best's and Universal's additional arguments in support of dismissal.

## Conclusion

For the foregoing reasons, Universal's and Best's motions to dismiss Counts II-IV are granted.  The Plan's claims against Universal and Best are dismissed, and the dismissal is with prejudice because the problem with those claims cannot be cured with repleading.


August 29, 2016                    _____
                                         United States District Judge